# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-07-00729-CV

---

**City of Austin, Appellant**

v.

**Harry M. Whittington; Mercedes B. Whittington; Mercedes Gregg f/k/a Mercedes Whittington, Individually and as Trustee of the Margaret Lynn Puckett 1989 Trust, the Sara Whittington May 1989 Trust, the Caroline Elizabeth Puckett 1989 Trust, the Michael Erskine May 1989 Trust, the Camille Meriwether May 1989 Trust, and the William Tyndale Puckett, Jr. 1989 Trust; Sally Whittington May, Individually and as Trustee of the Margaret Lynn Puckett 1989 Trust, the Sara Whittington May 1989 Trust, the Caroline Elizabeth Puckett 1989 Trust, the Michael Erskine May 1989 Trust, the Camille Meriwether May 1989 Trust, and the William Tyndale Puckett, Jr. 1989 Trust; and Margaret Whittington Puckett, Individually and as Trustee of the Margaret Lynn Puckett 1989 Trust, the Sara Whittington May 1989 Trust, the Caroline Elizabeth Puckett 1989 Trust, the Michael Erskine May 1989 Trust, the Camille Meriwether May 1989 Trust, and the William Tyndale Puckett, Jr. 1989 Trust, Appellees**

---

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
### NO. D-1-GV-07-000942, HONORABLE JOSEPH H. HART, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

The City of Austin ("the City") condemned a piece of property owned by appellee Harry M. Whittington and members of his family (collectively, "the Whittingtons"). The Whittingtons contested the condemnation, and the City sued to enforce it. A jury found that the condemnation (1) was not "necessary to advance or achieve a public use" and (2) was "arbitrary and capricious, made in bad faith, or fraudulent." The trial court disregarded the former finding, holding that as a matter of law the condemnation was necessary for a public use. The court nevertheless

entered judgment for the Whittingtons because it concluded that the latter finding was supported by legally and factually sufficient evidence. The City argues, among other things, that this conclusion was erroneous. We will affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

This is the third time we have entertained this case. *See City of Austin v. Whittington*, No. 03-05-00232-CV, 2007 Tex. App. LEXIS 3315 (Tex. App.—Austin Apr. 26, 2007, no pet.); *Whittington v. City of Austin* (*Whittington I*), 174 S.W.3d 889 (Tex. App.—Austin 2005, pet. denied). We have previously discussed its factual and procedural background at length, so here we summarize only the germane details.

The Whittingtons owned a city block in downtown Austin. On August 9, 2001, the Austin City Council passed a resolution that the Whittingtons' property, "Lots 1-8, inclusive, Block 38 of the Original City of Austin, in the City of Austin, Travis County, Texas should be acquired for a public use." The resolution authorized the city attorney to file a condemnation suit "and take other appropriate action to acquire the property." Accordingly, the City sued the Whittingtons. *See* Tex. Prop. Code Ann. § 21.012(a) (West 2003). A panel of special commissioners determined that $7,650,000 was just compensation for the property, so the City deposited that amount in the trial court registry and took possession of the property. *See id*. § 21.021 (West 2003). The City proceeded to build a parking garage and an Austin Energy chilling plant on the property. The Whittingtons opposed the condemnation, arguing that these were not proper "public uses" and that $7,650,000 was insufficient compensation.

Among other things, the parties disagreed whether the description of Block 38 in the City's original petition fairly included a 20-foot-wide strip of land that separated lots 1 through 4

2

from lots 5 through 8. Consequently, the City amended its petition to clarify that it sought to condemn that strip along with lots 1 through 8. The parties agreed to submit the issue to the court separately from the remaining issues, which were submitted to a jury.

After a full trial, a jury found that (1) the taking of the Whittingtons' property was not "necessary to advance or achieve a public use"; (2) the City sought "to take the Whittingtons' property for economic development purposes" in violation of Texas Government Code section 2206.001; and (3) the City's "decision to take the Whittingtons' property [was] arbitrary and capricious, made in bad faith, or fraudulent." Upon post-trial motion by the City, the court disregarded the jury's first and second findings. The court held that (1) as a matter of law the taking of the Whittingtons' property was "necessary to advance or achieve a public use"[1] and (2) Texas Government Code section 2206.001 did not apply retroactively to this case.[2] The court also held, however, that because the jury's third finding was supported by legally and factually sufficient evidence, the Whittingtons were entitled to judgment in their favor. Separately, sitting as factfinder, the court found that the City had not properly condemned the 20-foot-wide strip dividing Block 38. The court awarded the Whttingtons attorney's fees totaling $779,418.57, which included $105,000 in case the City appealed.

---

[1] As will be explained below, the court should have treated public use and necessity as separate questions, with only the former being answered as a matter of law. *See Anderson v. Teco Pipeline Co.*, 985 S.W.2d 559, 565-66 (Tex. App.—San Antonio 1998, pet. denied). The court's error in combining the issues was harmless, however, because the court ultimately reached the right result. *See Hawthorne v. Guenther*, 917 S.W.2d 924, 931 (Tex. App.—Houston [1st Dist.] 1996, writ denied).

[2] Texas Government Code section 2206.001 became law in 2005. *See* Act of Aug. 31, 2005, 79th Leg., 2nd C.S., ch. 1, § 1, 2005 Tex. Gen. Laws 1. The City condemned Block 38 in 2001.

**STANDARD OF REVIEW**

We review a judgment entered on a jury verdict for legal and factual sufficiency. In a legal-sufficiency review, we view the evidence in a light most favorable to the verdict and indulge every reasonable inference to support it, crediting favorable evidence if a reasonable fact-finder could and disregarding contrary evidence unless a reasonable fact-finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 822 (Tex. 2005). We will uphold the jury's finding if more than a scintilla of competent evidence supports it. *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009). In a factual-sufficiency review, we consider and weigh all the evidence and set aside a finding "only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

**DISCUSSION**

The parties raise several issues on appeal, including whether the taking of Block 38 was for a public use; whether the trial court erred in submitting the public-use question to the jury; whether Government Code section 2206.001 applies to this case; whether the City's decision to take the Whittingtons' property was arbitrary and capricious, made in bad faith, or fraudulent; whether the City effectively condemned the 20-foot-wide strip dividing Block 38; and whether the award of attorney's fees was proper. As we explain below, the issue of whether the City acted arbitrarily, in bad faith, or fraudulently obviates all the other issues except for attorney's fees.

A governmental entity may prevail on a condemnation claim only if the condemnation is for a "public use." *Whittington I*, 174 S.W.3d at 896. "There are two aspects to the 'public use' requirement. First, the condemnor must intend a use for the property that constitutes a 'public use'

4

under Texas law. Second, the condemnation must actually be necessary to advance or achieve the ostensible public use." *Id.* Regarding the first part of this test, whether a use is "public" is a question of law for the court to decide. *Id.* at 897. Regarding the second part, the condemnor must "establish that its governing board actually made a determination that the particular taking was necessary to advance the ostensible public use." *Id.* at 898. If the condemnor establishes that its governing board did so, we will presume that its determination of necessity was correct. *FKM P'ship Ltd. v. Board of Regents of the Univ. of Houston Sys.*, 255 S.W.3d 619, 629 (Tex. 2008). This presumption is conclusive absent a showing that the condemnor acted fraudulently, in bad faith, or arbitrarily. *See Anderson v. Teco Pipeline Co.*, 985 S.W.2d 559, 565 (Tex. App.—San Antonio 1998, pet. denied). Whether the condemnor acted fraudulently, in bad faith, or arbitrarily is a fact question that may properly be decided by a jury. *See id.* at 566.

The City argues that we should analyze the Whittingtons' defenses of arbitrariness, bad faith, and fraud as part of our larger analysis of whether the City's taking was for a public use (which, again, is a matter of law). It claims that these defenses "exist only in service to the constitutional question of 'public use.' If, after a jury verdict, a court determines as a matter of law that the use at issue is a public one, then the . . . defenses must give way to the court's determination."[3] The City cites no authority for this proposition, which if implemented would

---

[3] The City makes the same point two other ways. First, it states:

The only explanation for the district court's legal mis-step [in entering judgment against the City] is that it erroneously assigned independent legal weight and meaning to the questions about whether the City's actions were arbitrary and capricious, in bad faith, and fraudulent. But, these defenses are not independent of the over-arching question of whether a taking is for public use; they are subsidiary to it. If, as here, there is a post-verdict determination that, as a matter of law, the

deprive juries of their proper role as fact-finder. *See id.* ("When a fact issue exists regarding whether the company's decision was made in bad faith or was arbitrary, capricious, or fraudulent, that issue may be submitted to the jury for determination."). It was proper for the jury to consider whether the City acted arbitrarily, in bad faith, or fraudulently, so if the jury's finding on the matter was supported by legally and factually sufficient evidence, then the Whittingtons were entitled to prevail.[4] As corollaries, if the Whittingtons were entitled to prevail, then it becomes moot whether the City effectively condemned the 20-foot-wide strip dividing Block 38 and whether Government Code section 2206.001 applies.

We hold that, at a minimum, the jury's finding of bad faith was supported by legally and factually sufficient evidence.[5] The Whittingtons introduced evidence that the City knowingly

_____

taking was for a public use, this legal determination overrides any fact findings about the three defenses and renders them superfluous.

Second, it states: "jury determinations about whether a condemnation decision was arbitrary and capricious, in bad faith, or fraudulent are for no other purpose than to aid the court in answering the constitutional question of law whether the taking was for a public use or not."

[4] The City argues that the Whittingtons had to meet a heightened evidentiary standard to prevail on their allegations of arbitrariness, bad faith, and fraud. *See Whittington v. City of Austin* (*Whittington I*), 174 S.W.3d 889, 906 n.15 (Tex. App.—Austin 2005, pet. denied) ("Texas courts have generally imposed a high threshold for proving the . . . defenses of fraud, bad faith or abuse of discretion where a condemnor has met its initial burden to establish public use and necessity."). But the jury charge instructed the jurors to evaluate the Whittingtons' defenses under a preponderance-of-the-evidence standard, and the City did not object. Thus, we do not employ a heightened review standard. *See Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000) ("It is the court's charge, not some other unidentified law, that measures the sufficiency of the evidence when the opposing party fails to object to the charge.").

[5] The jury charge defined "bad faith" as "more than negligence or lack of diligence. Bad faith implies an intent to injure, or some other improper motive . . . . [T]he Whittingtons must show that the City knowingly disregarded their rights." This definition comes from applicable case law, *see Westgate Ltd. v. State*, 843 S.W.2d 448, 461 (Tex. 1992) (Doggett, J., dissenting), and the City did not object to its use at trial, so we will use it here.

6

misrepresented the necessity of building a chilling plant on Block 38. In the "Final Offer" letter it sent the Whittingtons before filing a condemnation proceeding, the City stated that the chilling plant would "be used to provide the chilled water necessary to operate the air conditioning systems of [nearby buildings]." In fact, the chilling plant was not necessary to provide that water; evidence introduced at trial showed that another plant had previously provided the water and actually continued to do so after the Block 38 plant was built. The evidence also showed that the author of the Final Offer letter knew as much, having previously received an email from the City's project manager stating that "this new plant is not absolutely necessary," but nevertheless decided to represent that the plant was necessary in the Final Offer letter. Such a knowing misrepresentation is more than a scintilla of evidence of bad faith. *See Westgate Ltd. v. State*, 843 S.W.2d 448, 461 (Tex. 1992) (Doggett, J., dissenting) (bad faith demonstrated by knowing disregard of condemnee's rights). It also shows that the jury's bad-faith finding was not "clearly wrong and unjust." *Cain*, 709 S.W.2d at 176. In other words, the jury's finding of bad faith was supported by legally and factually sufficient evidence. We therefore hold that judgment for the Whittingtons was proper. *See Whittington I*, 174 S.W.3d at 906 n.15 (bad faith is defense to takings claim). As a result, we need not consider whether the taking of Block 38 was for a public use; whether the trial court erred in submitting the public-use question to the jury; whether Government Code section 2206.001 applies to this case; or whether the City effectively condemned the 20-foot-wide strip dividing Block 38.

We do, however, need to briefly address the issue of attorney's fees. The City concedes that awarding fees was proper if the Whittingtons rightly prevailed. *See* Tex. Prop. Code Ann. § 21.019(c) (West 2003). And the Whittingtons concede that their fees award should not have

7

included $105,000 for appeals.  *See FKM P'ship, Ltd. v. Board of Regents*, 255 S.W.3d 619, 637 (Tex. 2008).  We therefore modify the original fee award from $779,418.57 to $674,418.57 and affirm it as modified.

## CONCLUSION

The Whittingtons rightly prevailed because, at a minimum, their defense of bad faith was supported by legally and factually sufficient evidence.  They were also entitled to recover attorney's fees totaling $674,418.57.  We modify the original judgment, which awarded $779,418.57 in fees, and affirm it as modified.

_____

David Puryear, Justice

Before Chief Justice Jones, Justices Puryear and Henson

Modified and, as Modified, Affirmed

Filed:   February 18, 2010