# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00410-CV

**Appellants, Harry M. Whittington; Mercedes B. Whittington; Mercedes Gregg f/k/a Mercedes Whittington, individually and as trustee of the Margaret Lynn Puckett 1989 Trust, the Sara Whittington May 1989 Trust, the Caroline Elizabeth Puckett 1989 Trust, the Michael Erskine May 1989 Trust, the Camille Meriwether May 1989 Trust, and the William Tyndale Puckett, Jr. 1989 Trust; Sally Whittington May, individually and as trustee of the Margaret Lynn Puckett 1989 Trust, the Sara Whittington May 1989 Trust, the Caroline Elizabeth Puckett 1989 Trust, the Michael Erskine May 1989 Trust, the Camille Meriwether May 1989 Trust, and the William Tyndale Puckett, Jr. 1989 Trust; and Margaret Whittington Puckett, individually and as trustee of the Margaret Lynn Puckett 1989 Trust, the Sara Whittington May 1989 Trust, the Caroline Elizabeth Puckett 1989 Trust, the Michael Erskine May 1989 Trust, the Camille Meriwether May 1989 Trust, and the William Tyndale Puckett, Jr. 1989 Trust // Cross-Appellant, City of Austin**

**v.**

**Appellee, City of Austin // Cross-Appellees, Harry M. Whittington; Mercedes B. Whittington; Mercedes Gregg f/k/a Mercedes Whittington, individually and as trustee of the Margaret Lynn Puckett 1989 Trust, the Sara Whittington May 1989 Trust, the Caroline Elizabeth Puckett 1989 Trust, the Michael Erskine May 1989 Trust, the Camille Meriwether May 1989 Trust, and the William Tyndale Puckett, Jr. 1989 Trust; Sally Whittington May, individually and as trustee of the Margaret Lynn Puckett 1989 Trust, the Sara Whittington May 1989 Trust, the Caroline Elizabeth Puckett 1989 Trust, the Michael Erskine May 1989 Trust, the Camille Meriwether May 1989 Trust, and the William Tyndale Puckett, Jr. 1989 Trust; and Margaret Whittington Puckett, individually and as trustee of the Margaret Lynn Puckett 1989 Trust, the Sara Whittington May 1989 Trust, the Caroline Elizabeth Puckett 1989 Trust, the Michael Erskine May 1989 Trust, the Camille Meriwether May 1989 Trust, and the William Tyndale Puckett, Jr. 1989 Trust[1]**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT NO. D-1-GV-07-000942, HONORABLE JOSEPH H. HART, JUDGE PRESIDING

---

[1] In this appeal, we will refer to the appellants and cross-appellees as "the Whittingtons" and to the appellee and cross-appellant as "the City."

**O P I N I O N**

The City elected to take property belonging to the Whittingtons. As part of the process, the City paid a deposit into the registry of the trial court, and the deposit was later placed in an investment account with the permission of the parties. After the supreme court determined that the condemnation of the property was proper, the district court awarded the investment income to the City. Further, the district court used the date of a prior trial court judgment in its calculations when determining the amount of prejudgment and postjudgment interest owed. On appeal, the Whittingtons urge that they were entitled to the investment income, and on cross-appeal, the City challenges the district court's decision to use the date of the prior judgment when determining the interest awards. We will reverse the portion of the district court's judgment awarding investment interest to the City and affirm the remainder of the judgment.

**BACKGROUND**

This case presents the denouement of a conflict that arose between the City and the Whittingtons, which has resulted in extensive litigation as well as multiple appeals in this Court and in the supreme court. *See City of Austin v. Whittington*, 384 S.W.3d 766 (Tex. 2012) ("*Whittington*"); *City of Austin v. Whittington*, 379 S.W.3d 278 (Tex. App.—Austin 2010) ("*2010 Whittington*"), *rev'd*, 384 S.W.3d 766 (Tex. 2012); *City of Austin v. Whittington*, 385 S.W.3d 28 (Tex. App.—Austin 2007, no pet.) ("*2007 Whittington*"); *Whittington v. City of Austin*, 174 S.W.3d 889 (Tex. App.—Austin 2005, pet. denied) ("*2005 Whittington*"). In conformity with an extensive construction project, including the expansion of the City's convention center and the building of a cooling plant,

2

the City elected "to acquire Block 38." *Whittington*, 384 S.W.3d at 774. At that time, Block 38 was owned by the Whittingtons. *Id.* at 773. "The City and the Whittingtons could not agree on a price for Block 38, so the City Council passed a resolution in August 2001 authorizing a condemnation suit to acquire Block 38." *Id.* at 775.

In October 2001, "[t]he City filed a condemnation suit" in a county court at law. *Id.* Subsequently, the trial court "appointed three special commissioners, who awarded the Whittingtons $7,650,000." *Id.* However, the City and the Whittingtons objected to the amount of the award. *Id.* In order to take possession of the property pending the resolution of the dispute, the City deposited the amount of the award "into the registry of the court in January 2002." *Id.*; *see* Tex. Prop. Code § 21.021(a) (authorizing condemnor to take possession of property if condemnor deposits with court amount awarded by special commissioners); Tex. Loc. Gov't Code § 117.052(c)(7) (explaining that county clerk "is responsible for funds deposited into the registry fund" for "an eminent domain proceeding"). Once the City took possession of the property, the construction project began. Shortly after the award was placed in the registry of the court, the Whittingtons filed a motion to place the money in a separate account "[i]n order that this award earn interest at the highest rate reasonably available," and the City agreed with the request. *See* Tex. Loc. Gov't Code § 117.053(c) (authorizing clerk to transfer funds into separate account if ordered by court). Accordingly, the trial court granted the request. When they made the request, the Whittingtons explained that they were still contesting the City's right to condemn the property and, therefore, were not asking "to withdraw funds from the custody of the Clerk's Registry."

At the end of the trial before the county court at law, the "jury awarded $7,750,000 in damages, and the trial court entered judgment on that award." *Whittington*, 384 S.W.3d at 775-76.

3

Because the damages awarded by the jury were $100,000 more than the deposit that the City originally made, the City deposited an additional $100,000 into the account plus an additional $13,260, which represented the amount of prejudgment interest on the extra deposit that had accrued since the first deposit. *See 2005 Whittington*, 174 S.W.3d at 907 (explaining that "prejudgment interest begins to accrue on the date of the constitutional taking, the date the condemnor pays the amount of the special commissioners' award into the court's registry and gains the right to possess the property"). The Whittingtons appealed the judgment of the trial court, and this Court determined "that the City failed to meet its . . . burden regarding its authority to condemn the Whittingtons' property." *Id.* at 894, 908. Accordingly, we reversed and remanded the case for further proceedings. *Id.* at 908.

After the case was remanded, it was transferred to the district court. *Whittington*, 384 S.W.3d at 776. At the end of the trial on remand, "the jury found that: (1) the taking was not necessary to advance or achieve a public use; (2) the taking was for economic development purposes; and (3) the decision to take the property was fraudulent, in bad faith, and arbitrary and capricious." *Id.* at 776. Moreover, the jury determined that the fair market value of Block 38 was $10,500,000. After the jury reached its decision, the Whittingtons filed a motion for entry of judgment and proposed judgment in which the Whittingtons requested that the district court decide, in accordance with the jury's determinations, that the City did not have the right to condemn the property and to order that the City surrender possession of the property to the Whittingtons. Subsequently, the trial court determined "as a matter of law that: (1) the taking was necessary to advance or achieve a public use"; and (2) "the statute prohibiting takings for economic development . . . did not apply

4

retroactively to the proceeding (disregarding the jury's contrary answers)." *Id.* Although the district court reversed two of the jury's findings, it "entered judgment for the Whittingtons because it determined that legally and factually sufficient evidence supported the jury's findings that the taking was fraudulent, in bad faith, and arbitrary and capricious." *Id.* Accordingly, the district court ordered the City to surrender possession of Block 38 and awarded the Whittingtons damages resulting from the temporary possession of Block 38. After the district court rendered its judgment ("2007 judgment"), the City did not place any additional funds into the account.

Subsequently, the City appealed the district court's judgment. *See 2010 Whittington*, 379 S.W.3d at 280. On appeal, this Court concluded that the jury's determination of bad faith "was supported by legally and factually sufficient evidence." *Id.* at 282-83. The City appealed our decision, and the supreme court reversed our judgment and concluded that "the City's determination that Block 38 was necessary for public use was not fraudulent, in bad faith, or arbitrary and capricious." *Whittington*, 384 S.W.3d at 792. In addition, the court decided that the City's taking did not violate the statutory prohibition against takings for economic development because the City's actions fell within a statutory exception. *Id.* In light of these determinations, the court remanded the case to the district court "for entry of judgment in accordance with [its] opinion." *Id.*

During this remand, the Whittingtons and the City filed competing motions for entry of final judgment. In the City's motion, the City mentioned that it has "thus far deposited a total of $7,763,260.60" into the registry of the court, that the money was transferred to an investment account, and that the Whittingtons have not withdrawn any of the money. Moreover, the City recommended that postjudgment interest begin to run from the date that the court issued its final

5

judgment on remand and that the interest award be calculated using a rate of 5%. *See* Tex. Fin. Code § 304.005(a) (explaining that postjudgment interest begins to run on day "judgment is rendered"). Regarding prejudgment interest, the City similarly recommended a rate of 5%. *See id.* § 304.201 (explaining that prejudgment interest rate in condemnation case "is equal to the postjudgment interest rate"). However, the City argued that the Whittingtons were only entitled to prejudgment interest from the day that the City took possession of the property to the date of the 2007 judgment rendered by the district court. Essentially, the City argued that the Whittingtons were not entitled to any additional interest because the Whittingtons rejected the compensation award at that time.

In their motion, the Whittingtons argued that in lieu of prejudgment interest on the amount of money that the City deposited into the court registry, they should be given the amount of investment interest earned on that money when it was invested by agreement of the parties. Regarding the portion of the $10,500,000 award that exceeded the amount deposited into the registry, the Whittingtons urged that they were entitled to postjudgment interest from the date that the 2007 judgment was rendered. Moreover, the Whittingtons contended that because the 2007 judgment is the start date, the interest rate should be 8.25%. Alternatively, the Whittingtons argued that in the event that the district court determined that the 2007 judgment should not be considered the start date for the calculation of postjudgment interest and instead elected to use as the start date the date of the final judgment on remand, the Whittingtons were entitled to prejudgment interest until the date that the judgment on remand was issued.

After considering the arguments by the parties, the district court issued a judgment ("2013 judgment") awarding "fee simple title to Block 38" to the City and ordering that the Whittingtons recover $10,500,000 in compensation as found by the jury previously. Regarding

6

interest awards, the district court determined that the date of the 2007 judgment should serve as the end point for the award of prejudgment interest and as the start point for the award of postjudgment interest and further determined that the rate for each award was 8.25%. Accordingly, the district court concluded that the Whittingtons should be awarded $1,254,959 in prejudgment interest, which was interest accrued on the difference between the jury award of $10,500,000 and the $7,750,000 that the City deposited with the court registry and was compensation from the time of the taking (January 24, 2002) to the day before the 2007 judgment was entered. Regarding postjudgment interest, the district court awarded the Whittingtons interest on the difference between the jury award and the amount deposited into the court registry ($2,750,000) and on the prejudgment interest calculated above ($1,254,959). Further, the district court ordered that the amount of this award continue to increase until the remainder of the judgment was paid to the Whittingtons. In addition, the district court denied the Whittingtons' request for the interest earned on the deposited money after it was invested and instead awarded the interest to the City. In summary, the Whittingtons were entitled to $10,500,000 for the value of Block 38, $1,254,959 in prejudgment interest, and postjudgment interest on $4,004,959, which represents the difference between the deposits made by the City and the value of Block 38 plus the prejudgment-interest award.

Shortly after the district court rendered its judgment, the Whittingtons and the City each appealed the judgment of the district court.

**DISCUSSION**

In this appeal, the Whittingtons and the City each challenge different portions of the interest awards ordered by the district court. In their appeal, the Whittingtons note that the City took

7

possession of Block 38 on January 24, 2002, when the City deposited into the court registry the amount awarded by the special commissioners.  Accordingly, they urge that they are entitled "to the interest earned on the deposited funds during the ten-plus years that the money remained in the court's registry."  In its cross-appeal, the City contends that the district court erred when it used the 2007 judgment as the date from which to make prejudgment and postjudgment interest-rate calculations.  Instead, the City urges that the district court should have used the date of the 2013 judgment.  Moreover, the City contends that the district court's allegedly improper decision to use the earlier judgment resulted in the imposition of a higher interest rate for both calculations.  In addition, the City notes that the Whittingtons were awarded $10,500,000 by a jury in 2007 but asserts that the Whittingtons rejected that award.  Accordingly, the City insists that the Whittingtons were not entitled to an interest award for the period of time between the 2007 judgment and the 2013 judgment.

**The Whittingtons' Appeal**

In their appeal, the Whittingtons contest the portion of the district court's judgment awarding the City the investment interest earned on the deposits that the City made to the court registry.  At the time that the district court entered the 2013 judgment, the investment interest that had been earned on the account was approximately $1.8 million.  When challenging this portion of the district court's judgment, the Whittingtons contend that the district court's judgment is inconsistent with the common law rule requiring that interest follow principal, is not authorized by the Property Code, and is contrary to the manner in which prejudgment interest is calculated in condemnation

8

cases.[2]  In resolving this issue on appeal, we must bear in mind that this issue only concerns the interest accrued on the deposits that the City made to the court registry and does not address the prejudgment interest that the district court ordered the City to pay on the portion of the valuation award that exceeded the amount of the deposits.  *See 2005 Whittington*, 174 S.W.3d at 907 (explaining that property owners are entitled to prejudgment interest on any award given by trial court that exceeds amount of deposit but stating that owners do not receive prejudgment interest on amount of deposit).  As discussed earlier, the district court determined that the Whittingtons were entitled to prejudgment interest on the portion of the $10,500,000 judgment that exceeded the deposits totaling $7,750,000, but as pointed out by the Whittingtons in this issue, the court concluded that the Whittingtons were not entitled to interest of any kind on the $7,750,000 deposit.

When arguing in favor of the district court's decision, the City contends that the Whittingtons had no right to the investment interest on the funds deposited by the City.  First, the City argues that the Property Code explicitly states that condemning authorities are entitled to the interest on funds deposited with trial courts.  *See* Tex. Prop. Code § 21.021.  Under the Code, "[a]fter the special commissioners have made an award in a condemnation proceeding, . . . the condemnor may take possession of the condemned property pending the results of further litigation if the condemnor" fulfills the statutory requirements.  *Id.* § 21.021(a); *see also City of Houston v. Texan Land & Cattle Co.*, 138 S.W.3d 382, 390 (Tex. App.—Houston [14th Dist.] 2004, no pet.)

---

[2] In related arguments, the Whittingtons also contend that the district court's decision to award the investment interest to the City resulted in an unconstitutional taking and denied them "just" and "adequate" compensation. Because we are persuaded by the Whittingtons' other arguments, we need not address their constitutional claims. *See Stockton v. Offenbach*, 336 S.W.3d 610, 618 (Tex. 2011) (instructing courts to avoid making constitutional rulings if alternative ruling is possible).

(explaining that when seeking to condemn property, condemning authority has two options: "he can either make the requisite deposit and take immediate possession of the property, or he may await the jury's decision and leave the condemnee with possession during the pendency of suit"). Specifically, the condemnor must:

> (1) pay[] to the property owner the amount of damages and costs awarded by the special commissioners or deposit[] that amount of money with the court subject to the order of the property owner;
>
> (2) deposit[] with the court either the amount of money awarded by the special commissioners as damages or a surety bond in the same amount issued by a surety company qualified to do business in this state, conditioned to secure the payment of an award of damages by the court in excess of the award of the special commissioners; and
>
> (3) execute[] a bond that has two or more good and solvent sureties approved by the judge of the court in which the proceeding is pending and conditioned to secure the payment of additional costs that may be awarded to the property owner by the trial court or on appeal.

Tex. Prop. Code § 21.021(a). After noting these requirements, the City contends that if a condemning entity seeks to gain possession by paying the required deposit, trial courts are obligated under the Code to "pay the interest that accrues from the deposit or investment to the condemnor." *Id.* § 21.021(d). Accordingly, the City asserts that the trial court properly awarded to the City the interest earned from investing the deposit.

The City's reliance on this provision is misplaced. *See City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008) (describing manner in which courts construe statutes). The provision instructing courts to award interest to a condemnor specifies that the instruction is limited to deposits made "under Subdivision (2) of Subsection (a)." Tex. Prop. Code § 21.021(d). Further,

10

the statute in question excuses condemnors that are also governmental entities from paying the additional deposits required by subsections 21.021(a)(2) and (a)(3). *Id.* § 21.021(b) (providing that "[t]his state, a county, or a municipal corporation . . . is not required to deposit a bond or the amount equal to the award of damages under Subdivisions (2) and (3) of Subsection (a)"). In other words, governmental units, like the City, are not required to make the additional deposit that is the subject of the Property Code's instruction obligating trial courts to award interest earned on the deposit to a condemnor. *Id.* § 21.021(a), (c), (d).[3]

By only imposing this requirement on deposits made under subsection 21.021(a)(2), the legislature has seemingly determined that the accrued interest on deposits required under subsection 21.021(a)(1) does not belong to the condemnor. This differential treatment is supported by the stated purpose for the two types of deposits. In particular, the first deposit is to be made either to the property owner or the registry of the court "subject to the order of the property owner," and the amount of the deposit is equal to the award determined by the special commissioners. *Id.* § 21.021(a)(1); *Thomas v. Housing Auth.*, 264 S.W.2d 93, 94 (Tex. 1953) (explaining that "subject

---

[3] On appeal, the City contends that construing the governing statutes in the manner described above places governmental entities "in an inferior position to private condemnors" because this construction denies governmental entities "accumulated interest that the private condemnors would be statutorily entitled to." We disagree. Our determination that condemnors are not entitled to investment interest accrued on a deposit made under subsection 21.021(a)(1) would seem to have equal applicability to private entities as well as governmental ones. *See* Tex. Prop. Code § 21.021(a)(1). Accordingly, private and governmental condemnors are treated identically regarding these types of deposits. Moreover, although the Property Code does allow non-governmental condemnors to recover interest on a deposit made under subsection 21.021(a)(2), *id.* § 21.021(a)(2), (d), we cannot agree that this results in preferential treatment to private condemnors because the Code entirely excuses governmental condemnors from the obligation of making this type of deposit at all, *id.* § 21.021(a)(2), (c).

11

to the order of" means that "the landowner may withdraw the deposit"). Moreover, the property owner's "right to have full control over the deposited funds, including interest accrued," is the "quid pro quo for [the condemnor]'s right of immediate possession." *State v. Gordon*, No. 14-94-00868-CV, 1996 Tex. App. LEXIS 605, at *11 (Tex. App.—Houston [14th Dist.] Feb. 15, 1996, writ denied); *see also id.* at *10-11 (concluding that property owner was properly awarded interest on deposit made in court's registry because condemnor took immediate possession of property after making deposit required by subsection 21.021(a)(1) of Property Code).

On the other hand, the second deposit, which is the type subject to the instruction that interest earned on the deposit be awarded to the condemnor, Tex. Prop. Code § 21.021(d), is required in order "to secure the payment of an award of damages by the court in excess of the award by the special commissioners," *id.* § 21.021(a)(2). Unlike the first type of deposit, property owners do not have control over the funds when they are deposited and may only withdraw the funds after the judgment becomes final and only if the amount of the judgment exceeds the amount set by the special commissioners. *See Central Power & Light Co. v. Graddy*, 318 S.W.2d 943, 951 (Tex. Civ. App.—Houston 1958, no writ) (explaining that under predecessor statute, property owner had right to withdraw first deposit in amount of commissioners' award when deposit was made but that owner could not withdraw second deposit in same amount, which was made to protect owner if there was increase in amount of damages, until after judgment became final), *disapproved of on other grounds by State v. Meyer*, 403 S.W.2d 366, 375 (Tex. 1966). The limitation on interest accrued on this type of deposit makes sense given that the deposit is designed to ensure that property owners will be able to recover any amount of the final judgment that exceeds the award made by the special

12

commissioners. In other words, if the amount of the final judgment does not exceed the award of the special commissioners, no portion of the second deposit is needed to fully compensate the property owner, and therefore, the property owner should not recover the accrued interest on the deposit. If the judgment amount does exceed the amount of the award, the limitation still makes sense because, as evidenced by the district court's judgment in this case, the property owner is entitled to recover prejudgment interest on the amount that exceeds the special commissioners' award in order to fully compensate the owner for the taking of his property. *See* Tex. Prop. Code § 21.021(a)(2), (d). Accordingly, the property owner is made whole without needing to award him the interest accrued on the deposit.[4]

---

[4] When supporting the district court's decision, the City points to a prior case by this Court that the City insists has settled this issue in its favor. *See Hopkins v. State*, No. 03-03-00499-CV, 2006 Tex. App. LEXIS 3530 (Tex. App.—Austin Apr. 27, 2006, pet. denied) (mem. op.). In that case, like this one, the property owner asked to transfer a condemnation deposit "into an interest-bearing account." *Id.* at *2. The trial court awarded interest on the funds to the owner, and the State did not challenge the interest award. *Id.* at *5, *25. The entirety of the issue pertaining to this interest award is as follows:

> In their fourth issue, appellants assert that the judgment does not clearly award them the $35,462 held in the registry of the court along with the interest that accrued while in the interest-bearing account. They acknowledge that the State "does not contest [their] right to receive the award deposit (and the interest on such deposit), as indicated by its motion for judgment," but argue that regardless of the State's agreement, "the judgment itself must clearly grant this relief."

> The State took possession of the condemned property after it deposited the amount of the special commissioners' award into the registry of the court. *See* Tex. Prop. Code Ann. § 21.021(a)(2). When it deposited the money, the parties agreed to transfer the money into an interest bearing account. Under these circumstances, "the court shall pay the interest that accrues from the deposit or investment to the condemnor." *Id.* § 21.021(d). Thus, the court was not required to award the interest to appellants. The trial court awarded appellants the underlying amount in addition to the interest accrued because the ultimate award exceeded both the original award and the amount

13

Next, the City asserts that even if subsection 21.021(d) of the Property Code does not compel a determination that the City was entitled to the interest earned on the deposit, then the statute is silent on the issue. *See id.* § 21.021. Accordingly, the City insists that the governing statutes should be construed in accordance with general legal principles indicating that judgment creditors are not entitled to interest awards once they have received and have complete access to an award of damages. *See Miga v. Jensen*, 96 S.W.3d 207, 212 (Tex. 2002) (providing that "[w]hen a judgment creditor has received an unconditional tender of the money awarded, and may invest it as he chooses, there is no need for the continuing accrual of post-judgment interest"); *see also Arete Partners, L.P. v. Gunnerman*, 643 F.3d 410, 416 (5th Cir. 2011) (explaining that cases have held that if plaintiff can access funds without condition, "there is no need to compensate him" with prejudgment interest "in the event he does not" but concluding that rule was inapplicable in that case). In addition, the

---

of interest accrued in the account. Although appellants also argue that the judgment is insufficiently definite to support their right to the original award, we disagree. The judgment recites that the original award, along with interest, should be credited to appellants. We overrule appellants' fourth issue.

*Id.* at *24-26. As shown above, this Court did not make any affirmative declaration regarding the propriety of prejudgment-interest awards in condemnation proceedings by governmental entities; instead, the holding on this issue was limited to a determination that the trial court's underlying judgment was clear enough to award the appellants all of the relief that they requested, including prejudgment interest. *Id.* When this Court commented that interest goes to the condemnor, we also, perhaps mistakenly, stated that the deposit at issue in that case was made under subsection 21.021(a)(2) rather than subsection 21.021(a)(1), which is the relevant subsection in the present case. *See* Tex. Prop. Code § 21.021(a)(1), (2). More importantly, those comments were not necessary to any holding and were, therefore, merely dicta. *See Travelers Indem. Co. v. Fuller*, 892 S.W.2d 848, 852 n.3 (Tex. 1995) (explaining that dicta is mere expression of opinion on issue not necessarily involved in case and does not create binding precedent); *Edwards v. Kaye*, 9 S.W.3d 310, 314 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (providing that "[d]ictum is an observation or remark made concerning some rule, principle, or application of law suggested in a particular case, which observation or remark is not necessary to the determination of the case").

14

City highlights condemnation cases standing for the proposition that "when a condemning authority tenders the amount of the commissioners' award in the registry of the court, it tolls the running of interest, at least to the amount so tendered" because "the condemnee may withdraw the deposit and is entitled to the use of the money pending a court determination of his damages." *Lin v. Houston Cmty. Coll. Sys.*, 948 S.W.2d 328, 338 (Tex. App.—Amarillo 1997, writ denied); *see Housing Auth. v. Shambry*, 252 S.W.2d 963, 966 (Tex. Civ. App.—Austin 1952, writ ref'd n.r.e.) (on reh'g) (stating that in cases where amount of damages is only issue, "the deposit is the equivalent of a tender and prevents the running of interest to the extent of the deposit"); *see also Shambry v. Housing Auth.*, 255 S.W.2d 184, 185 (Tex. 1953) (approving appellate court's ruling on interest but refusing application for writ).

As pointed out by the City, if the condemnor elects to pay the deposit, "any prejudgment interest that would accrue as a result of the condemnor's possession is tolled." *Texan Land & Cattle Co.*, 138 S.W.3d at 390; *see also id.* (explaining that for condemnation cases, "prejudgment interest does not begin to accrue until the condemnor takes possession of the property"). The rationale behind this rule is that once the deposit is made, the property owner has the right to use or invest those funds and will only be awarded additional prejudgment interest on awards that exceed the amount of the deposit because the additional amount represents money that the property owner was deprived of before the judgment. *See 2005 Whittington*, 174 S.W.3d at 907.

The interest award sought by the Whittingtons in this case is completely consistent with these general principles. As set out above, the City deposited the amount of the commissioners' award, and the Whittingtons and the City asked the trial court to invest those funds. Rather than

seeking to compel the City to pay a prejudgment-interest award on funds that simply sat in the court registry, the Whittingtons sought the investment interest that was earned on the deposit after it was transferred. Accordingly, the interest sought is consistent with the premise that funds deposited by the condemning authority belong to the property owner and with the premise that owners do not receive a prejudgment-interest award from condemnors on the amount of the deposit because the owners are free to use and invest the money as they see fit. That is essentially what occurred in this case, and the City's construction would lead to the unreasonable result that property owners are not entitled to investment income when the investments are made with the permission of trial courts but are entitled to investment income generated from the same type of investment if the owners completely remove the deposit from the custody of the court. *See C&H Nationwide, Inc. v. Thompson*, 903 S.W.2d 315, 322 n.5 (Tex. 1994) (explaining that courts should not construe statute in manner that leads to absurd results "if the provision is subject to another, more reasonable construction or interpretation"), *disapproved on other grounds by Battaglia v. Alexander*, 177 S.W.3d 893, 909 (Tex. 2005).

Moreover, in challenging the condemnation in this case, the Whittingtons disputed not only the amount of the award but also the propriety of the condemnation. Had the Whittingtons removed the deposit completely from the control of the trial court, they would have been precluded from challenging the City's right to take their property. *See Coastal Indus. Water Auth. v. Celanese Corp. of Am.*, 592 S.W.2d 597, 599 (Tex. 1979); *Hanford-Southport, LLC v. City of San Antonio*, 387 S.W.3d 849, 850 (Tex. App.—San Antonio 2012, pet. denied). We find nothing in the governing framework that would justify a conclusion that property owners seeking to challenge only the amount

16

of a condemnation award should be treated more favorably than owners who want to challenge the amount of the evaluation as well as the propriety of the condemnation.[5] The $1.8 million in investment interest at issue in this case illustrates just how significant and unreasonable that differential treatment could be.

---

[5] As will be addressed more thoroughly later in the opinion, the City contends that the Whittingtons procedurally waived this claim by not properly presenting their claim for the interest. However, the City also presents waiver arguments related to the issue discussed above: the Whittingtons' decision to challenge the City's ability to take their property. For example, in one set of arguments, the City contends that the Whittingtons waived their claim for the accrued interest by refusing "to accept the funds tendered them by the City's deposits." Essentially, the City urges that the Whittingtons were free to withdraw the funds from the registry after the 2003 judgment was rendered but that the Whittingtons chose instead to challenge the City's right to condemn the property at all. For that reason, the City argues that the Whittingtons voluntarily chose not to access the money and also chose to forego any investment opportunities that the money would have given them. In addition, the City insists that because the Whittingtons chose to challenge the right of the City to condemn the property instead of electing to exercise control over the deposited funds, the Whittingtons "made an election of remedies," which included an election "to forego any right they might have otherwise had . . . to interest on the deposited funds for the duration of the exercise of their election." *See Krobar Drilling, L.L.C. v. Ormiston*, 426 S.W.3d 107, 113 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (discussing doctrine of election of remedies).

As discussed above, if the Whittingtons had taken the funds completely from the custody of the trial court, they would have been unable to challenge the ability of the City to condemn Block 38. *See Hanford-Southport, LLC v. City of San Antonio*, 387 S.W.3d 849, 850 (Tex. App.—San Antonio 2012, pet. denied). Moreover, while the City correctly points out that property owners may choose to challenge the condemning authorities' ability to condemn or to accept the decision but challenge the amount of the award, we can see no reason to conclude that the election to choose the first of two equally permissible remedies should result in the owner being denied full compensation. Further, we cannot agree with the City's assertion that the Whittingtons agreed to give up any accumulation of interest on the deposit; as discussed above, the Whittingtons asked the trial court to invest the money. *See* Tex. Loc. Gov't Code § 117.053(c). Accordingly, the Whittingtons did not prevent the deposit from accumulating interest and then impermissibly seek a prejudgment-interest award; rather, the Whittingtons sought the return on their election to have the trial court invest the funds. Finally, for the reasons that are more thoroughly discussed in the portion of the opinion discussing the City's cross-appeal, we do not believe that the Whittingtons made the type of election of remedies that could somehow have prohibited them from recovering interest that was rightfully theirs.

17

In addition, the award sought by the Whittingtons is consistent with the common law principle that ownership of principal determines ownership of interest. *See, e.g.*, *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 162 (1980) (providing that "[t]he usual and general rule is that any interest on an interpleaded and deposited fund follows the principal and is allocated to those who are ultimately to be the owners of that principal"); *State Farm Life Ins. Co. v. Martinez*, 216 S.W.3d 799, 808 (Tex. 2007) (explaining that after funds are deposited into registry, "interest accrues to its ultimate owner"); *cf. Moldon v. County of Clark*, 188 P.3d 76, 78 (Nev. 2008) (concluding that property owner is entitled to interest earned on condemnation deposit); *Government of the Virgin Islands v. 8560 Square Feet of Land*, 41 V.I. 120, 125 (Terr. V.I. 1999) (determining that property owner was entitled to interest accumulated on deposit placed in trial court's registry as part of condemnation proceeding).

Finally, the City also insists in its briefing that even if the Whittingtons were entitled to the investment interest on the deposited funds, the "Whittingtons waived any claim to the interest that accumulated on the City's deposits into the court registry." As support for this argument, the City argues that the 2003 judgment, which awarded the Whittingtons $7,750,000, did not specifically award the Whittingtons the accumulated interest. Moreover, the City notes that when the Whittingtons appealed that judgment, they did not present any issue regarding the accumulated interest. Similarly, the City points out that when the Whittingtons filed their motion for judgment regarding the 2007 proceeding, their proposed judgment requested that "[a]ny excess registry funds remaining after payment of the sums awarded to the Whittingtons under this judgment shall be returned to the City" and, accordingly, made no request regarding the accumulated interest. Furthermore, the City notes

that the 2007 judgment incorporated that excess-fund request and did not award the Whittingtons the investment interest. In addition, the City highlights that the Whittingtons did not appeal the 2007 judgment. *See* Tex. R. App. P. 25.1(c) (requiring party seeking to alter trial court's judgment to file notice of appeal); *Lubbock Cnty. v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 584 (Tex. 2002) (concluding that issue was waived when party presenting claim did not appeal trial court's judgment); *see also Neeley v. West Orange-Cove Consol. Indep. Sch. Dist.*, 228 S.W.3d 864, 867 (Tex. App.—Austin 2007, pet. denied) (providing that party may not present "issue on remand that it failed to raise in previous appellate proceedings").

We disagree. When this Court reversed the 2003 judgment in response to the appeal filed by the Whittingtons, we reversed the trial court's judgment and remanded the case for further proceedings. *See 2005 Whittington*, 174 S.W.3d at 906. Moreover, the only limitation that this Court offered on remand concerned prejudgment interest on any award exceeding the amount of the special commissioners' evaluation, *id.* at 906-08, and we made no ruling regarding the investment interest that began accruing when the deposit was transferred to an investment account. Accordingly, our reversal and remand effectively reopened the case "in its entirety," *Simulis, L.L.C. v. General Elec. Capital Corp.*, 392 S.W.3d 729, 734 (Tex. App.—Houston [14th Dist.] 2011, pet. denied), and the case was reinstated on the trial court's docket "as though it had never been tried," *see Profitlive P'ship v. Surber*, 248 S.W.3d 259, 262 (Tex. App.—Fort Worth 2007, no pet.). *Compare Manon v. Solis*, 142 S.W.3d 380, 386 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (explaining that remand without special limiting instructions allows trial court to have "a new trial on all issues of fact"), *with Neeley*, 228 S.W.3d at 867 (concluding that party could not challenge other party's right

19

to attorney's fees when remand was limited to determination of amount of those fees), *and Miller v. University Sav. Assoc.*, 858 S.W.2d 33, 35-36 (Tex. App.—Houston [14th Dist.] 1993, writ denied) (determining that party may not again contest liability in second appeal when first appeal remanded case only for determination regarding damages).

On remand, the jury determined that the condemnation was improper but also determined the fair market value of Block 38. In its 2007 judgment, the district court agreed that the condemnation was improper, *Whittington*, 384 S.W.3d at 776, ordered the City to surrender possession of the property, required the City to pay compensation for its temporary possession of Block 38, and returned the remaining portion of the deposit to the City. Accordingly, under the 2007 judgment, the Whittingtons were not entitled to the deposit nor to the investment interest on that deposit. After the trial court's decision was affirmed by this Court, *2010 Whittington*, 379 S.W.3d at 283, the supreme court reversed, determined that the City had the authority to condemn Block 38, and remanded "for entry of judgment in accordance with [its] opinion," *Whittington*, 384 S.W.3d at 792. Based on this disposition and history, we do not believe that the Whittingtons somehow waived their right to pursue a claim for the investment interest on the deposit made by the City. *See DiGiuseppe v. Lawler*, 269 S.W.3d 588, 603 (Tex. 2008) (explaining that "a litigant who has obtained a favorable judgment and has no reason to complain in the trial court is not required to raise an issue regarding an alternate ground of recovery until an appellate court reverses the judgment" and that party does not waive alternative ground for recovery by presenting it for first time after reversal on appeal); *cf. Boyce Iron Works, Inc. v. Southwestern Bell Tel. Co.*, 747 S.W.2d 785, 787 (Tex. 1988) (providing that if jury makes alternative theories of recovery, party may seek recovery under "alternative theory if the judgment is reversed on appeal").

20

For all the reasons previously given, we sustain the Whittingtons' issue on appeal challenging the trial court's decision to award the investment interest to the City.

**The City's Cross-appeal**

In its cross-appeal, the City argues that when the district court determined the amount of the prejudgment- and postjudgment-interest awards, it improperly based those calculations on the date of the 2007 judgment and the corresponding interest rate at that time rather than the date of the 2013 judgment and the corresponding interest rate. Consequently, the City contends that it was improperly obligated to pay millions more in interest than it should have been.

Under the Finance Code, "postjudgment interest on a money judgment . . . accrues during the period beginning on the date the judgment is rendered." Tex. Fin. Code § 304.005. Recently, the supreme court has issued two opinions addressing when a trial court's judgment is considered "rendered" after it has been appealed. *See Long v. Castle Tex. Prod. Ltd. P'ship*, 426 S.W.3d 73 (Tex. 2014); *Phillips v. Bramlett*, 407 S.W.3d 229 (Tex. 2013). In *Bramlett*, the Bramletts filed a healthcare claim against Phillips and were awarded actual damages, and Phillips appealed the trial court's judgment. 407 S.W.3d at 232. On appeal, the intermediate appellate court affirmed the actual damages awarded. *Id.* Subsequently, Phillips appealed the intermediate ruling, and the supreme court determined that "former article 4590i capped Phillips's liability." *Id.* at 233. Accordingly, the supreme court "reversed the court of appeals' judgment, and remanded the case to the trial court for entry of a new judgment consistent with [its] opinion." *Id.* On remand, "no new evidence" was admitted, and "both sides moved for entry of a new judgment." *Id.* In its judgment, the trial court "awarded the Bramletts actual damages capped under former article 4590i plus

21

postjudgment interest calculated from the date of the remand judgment." *Id.* The Bramletts appealed the trial court's judgment and argued that the trial court erred by calculating postjudgment interest from the date of the remand judgment rather than the date of the original judgment. *Id.* The court of appeals agreed with the Bramletts, and Phillips appealed the intermediate ruling. *Id.*

When deciding which trial court judgment should serve as the starting point for interest calculations, the supreme court explained that it has consistently held that "when an appellate court reverses a trial court's judgment and renders judgment on appeal, postjudgment interest begins to run from the date of the trial court's judgment, not the later date of the appellate court's judgment." *Id.* at 239. In addition, the supreme court explained that when it originally remanded the case, it "permitted the trial court to enter a final judgment that reflected this Court's holdings." *Id.* at 237. In light of this limited remand, the supreme court held that "when an appellate court remands a case to the trial court for entry of judgment consistent with the appellate court's opinion, and the trial court is not required to admit new or additional evidence to enter that judgment, as is the case here, the date the trial court entered the original judgment is the 'date the judgment is rendered,' and postjudgment interest begins to accrue and is calculated as of that date." *Id.* at 239 (construing "date the judgment is rendered" as mentioned in section 304.005 of Finance Code). In reaching this decision, the supreme court analogized the facts to those in *D.C. Hall Transportation, Inc. v. Hard*, 355 S.W.2d 257, 258 (Tex. Civ. App.—Fort Worth 1962, writ ref'd n.r.e.), in which the trial court on remand considered no new evidence and determined that postjudgment interest should run from the date of the original judgment. *Bramlett*, 407 S.W.3d at 240. In endorsing the decision by that trial court, the supreme court relied heavily on the reasoning of the intermediate

22

appellate court in *D.C. Hall*, which explained that the case was not remanded for a new trial, that the remand contained instructions directing the trial court to make additional findings based on the record from the original trial, and that the judgment on remand effectively took the place of the original judgment. *Id.* (citing *D.C. Hall*, 355 S.W.2d at 260).

Shortly after the supreme court released its opinion in *Bramlett*, it issued another opinion further solidifying the holding from *Bramlett*. *See Long*, 426 S.W.3d 73. In *Long*, a contract dispute resulted in a trial court judgment in favor of Castle Texas Production Limited Partnership and against Long. *Id.* at 76. On appeal to the intermediate appellate court, the court determined that the trial court improperly calculated the amount of prejudgment interest owed and remanded the case to the trial court "to recalculate prejudgment interest" in accordance with the "parties' joint operating agreement." *Id.* On remand, over Castle's objections, "the trial court concluded multiple times that it required evidence . . . to adjudicate prejudgment interest under the joint operating agreement." *Id.* at 85. Subsequently, the trial court issued a judgment awarding Castle postjudgment interest from the date of the original judgment, and Long appealed. *Id.* at 77, 85. The court of appeals affirmed the trial court's judgment, and Long appealed again. *Id.* at 77.

When issuing its decision, the supreme court explained that in general "if an appellate court reverses [a] final judgment and remands for further proceedings, the original, erroneous trial court judgment is no longer final because it no longer disposes of all parties and claims." *Id.* at 79. Further, the court provided that "if a remand results in multiple trial court judgments, postjudgment interest accrues from the date of the *final* judgment (rather than the original, erroneous judgment)." *Id.* However, the court explained that "if a remand does not require the trial court to reopen the record" or "if an appellate court renders the judgment the trial court should have rendered," then an

23

exception to that general rule applies, "and postjudgment interest will accrue from the date of the original, erroneous judgment." *Id.* at 79-80 (discussing Rule of Appellate Procedure 43.3); *see also* Tex. R. App. P. 43.3 (providing that "[w]hen reversing a trial court's judgment, the court must render the judgment that the trial court should have rendered, except when: (a) a remand is necessary for further proceedings; or (b) the interests of justice require a remand for another trial"). Stated differently, the court explained that "[t]he exception is when the appellate court renders (or could have rendered) judgment, in which case postjudgment interest accrues from the date of [the] trial court's original, erroneous judgment." *Long*, 426 S.W.3d at 80. Further, the court clarified that "[i]f the trial court possessed a sufficient record to render a correct judgment, the Finance Code and the rules of procedure allow postjudgment interest to accrue from the original judgment date" but that "if the trial court did not possess a sufficient record to render a correct judgment or the record otherwise must be reopened (as in a retrial), postjudgment interest will only accrue on the final judgment date once the record is sufficient." *Id.* at 81 (footnote omitted). Accordingly, the supreme court concluded "that postjudgment interest accrues from the date of the final judgment (rather than the original, erroneous judgment) unless the appellate court can or does render the judgment the trial court should have rendered." *Id.* at 82. Moreover, the court reasoned that "the determination of whether the record must be reopened on remand is one for the trial court in the first instance to be made based upon the time of remand." *Id.* at 85. Finally, the court reversed the appellate court's judgment and concluded that because "[t]he trial court determined it required additional evidence" on remand and because there was insufficient evidence in the record, "postjudgment interest must accrue from the trial court's final judgment" on remand. *Id.* at 87.

In the present case, the supreme court concluded that the City properly condemned Block 38, reversed this Court's previous opinion, and remanded the case "for entry of judgment in accordance with [its] opinion." *Whittington*, 384 S.W.3d at 792. After the remand, the district court did not consider any additional evidence or reopen the record before issuing the 2013 judgment.[6] Nevertheless, the City insists that the 2013 judgment should serve as the starting point for the calculation of postjudgment interest. As support for this proposition, the City contends that the 2007 judgment was not a final one because it did not dispose of the compensation issue and instead concluded that the condemnation was improper, that the 2013 judgment is the only final judgment awarding the Whittingtons compensation for the condemnation, and that the supreme court's opinion did not specify that it was remanding the case to allow the district court to issue the judgment that it "should have rendered" and instead simply remanded the case.

However, we are not persuaded by these arguments. In *Bramlett*, the supreme court explained that the decision to reverse or remand is often dependent upon practical considerations "the purpose of which generally is not to alter a party's substantive right of recovery. It should not be the basis for altering whether a party is entitled to postjudgment interest during the pendency of the appeal." 407 S.W.3d at 242. Moreover, the supreme court has acknowledged that although Rule of Appellate Procedure 43.3 "requires a court of appeals to render the judgment the trial court should have rendered, the limited nature of appellate records can make this task impossible." *Long*, 426 S.W.3d at 81. For these reasons, the supreme court has determined that the decision of whether the record should be reopened on remand should be left to the trial court. *Id.* In the present case,

---

[6] In its briefing, the City repeatedly agrees that no new evidence was presented on remand.

25

the district court decided that it did not need to reopen the record on remand in order to comply with the supreme court's directives, and no issue has been presented on appeal challenging that decision. Moreover, like *Bramlett*, the supreme court remanded the case in *Whittington* with the instruction that the district court enter a judgment in accordance with the opinion and did not order a new trial. *Whittington*, 384 S.W.3d at 792; *Phillips v. Bramlett*, 288 S.W.3d 876, 883 (Tex. 2009). In addition, although the district court's 2007 judgment did not award compensation for the condemnation, the jury did decide the alternative issue of compensation, and the jury's determination formed the basis for the 2013 judgment.

In an alternative set of arguments, the City contends that the Whittingtons should not recovery any "interest based on a 2007 accrual date" from the 2007 judgment because the Whittingtons rejected the $10.5 million valuation award determined by the jury in 2007 and instead asked the district court to conclude that the City had no right to condemn Block 38 and to order the City to relinquish possession of the property. Accordingly, the City urges that the delay in payment was entirely attributable to the Whittingtons and that it should not be responsible for the buildup of interest resulting from the Whittingtons' choice to forego compensation and to instead unsuccessfully challenge the City's right to condemn the property. *See Miga*, 96 S.W.3d at 212 (explaining that interest awards are not designed to punish judgment debtor).

Finally, the City construes the Whittingtons' decision to challenge the City's right to condemn Block 38 as an election of remedies, meaning that the Whittingtons waived any "right to recover interest based on a 2007 accrual date." *See Krobar Drilling, L.L.C. v. Ormiston*, 426 S.W.3d 107, 113 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (explaining that election of remedies

"is the act of choosing between two or more inconsistent but coexistent modes of procedure and relief allowed by law on the same state of facts. When a party thus chooses to exercise one of them he abandons his right to exercise the other remedy and is precluded from resorting to it"). Specifically, the City contends "that the Whittingtons' election in 2007 to obtain a judgment that did not include compensation but barred the taking of Block 38 is fundamentally inconsistent with their being awarded interest on a compensation award from the very date when the trial court reduced their choice to final judgment." *See id.* (providing that "[a]n election between remedies occurs, at the latest, when a party proceeds to final judgment on one claim with knowledge of an inconsistent claim or remedy" and that "it is the obtaining of a judgment on one theory or state of facts that precludes the ability to pursue other inconsistent remedies"); *Foley v. Parlier*, 68 S.W.3d 870, 882 (Tex. App.—Fort Worth 2002, no pet.) (clarifying that remedies are inconsistent when one stems from affirming transaction and other from rejecting it). Although the City acknowledges that the Whittingtons were free to seek compensation for the taking after the supreme court determined that the condemnation was proper, the City insists that the Whittingtons' election of remedies prohibits the Whittingtons from treating the 2007 judgment as if it were a judgment awarding compensation and obtaining an interest award from that date.

However, we do not believe that the doctrine of election of remedies has any applicability to this case. As a preliminary matter, we note that the supreme court has warned against expanding the doctrine beyond its traditional role. *See Fina Supply, Inc. v. Abilene Nat'l Bank*, 726 S.W.2d 537, 541 (Tex. 1987) (explaining that doctrine is "not favored' and "should not be extended"); *see also Bocanegra v. Aetna Life Ins. Co.*, 605 S.W.2d 848, 850 n.2 (Tex. 1980) (stating

27

that doctrine has been referred to as "a legal weed that judicial gardeners should root out"). The doctrine is designed "to prevent a party who has obtained a specific form of remedy from obtaining a different and inconsistent remedy for the same wrong," *Fina Supply*, 726 S.W.2d at 541, and "to prevent a double redress for a single wrong," *Slay v. Burnett Trust*, 187 S.W.2d 377, 393 (Tex. 1945). For example, the doctrine has been employed to prevent a party who was awarded damages in a suit from filing a subsequent suit seeking damages for a claim that is inconsistent with the claim from the first suit. *See, e.g.*, *City of Glen Heights v. Sheffield Dev. Co.*, 55 S.W.3d 158, 162, 164, 168 (Tex. App.—Dallas 2001, pet. denied) (concluding that doctrine applied and prevented subsequent suit where Sheffield was awarded damages in first suit alleging that ordinance constituted impermissible taking of his property and where in second suit Sheffield later alleged that ordinance had no effect on him); *cf. B.L. Nelson & Assocs., Inc. v. City of Argyle*, 535 S.W.2d 906, 910-11 (Tex. Civ. App.—Fort Worth 1976, writ ref'd n.r.e.) (determining that doctrine barred claim for quantum meruit where plaintiff did not present that claim in his contract suit and only presented claim on appeal in which appellate court determined that contract was void).

In this case, no impermissibly inconsistent claims were presented. When a governmental entity seeks to acquire an individual's property, the entity must pay adequate compensation for the taking. *See* Tex. Const. art. I, § 17 (providing that "[n]o person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person"). However, in resisting the entity's efforts, the property owner may challenge whether the condemnation was permissible and whether the amount offered as compensation was adequate. *See Hanford-Southport*, 387 S.W.3d at 850 (explaining that if property owner does not remove deposit from custody of trial court, he may contest condemnor's

28

ability to take property as well as amount of award); *Duncan v. Calhoun Cnty. Navigation Dist.*, 28 S.W.3d 707, 711 (Tex. App.—Corpus Christi 2000, pet. denied) (holding that "condemnation cause of action encompasses both the issues of 'right to take' and 'just compensation'").

That is what occurred in this case, and we can see no reason to deny the Whittingtons an interest award simply because they elected to pursue and win at trial the claim that would have provided them with the relief that they primarily wanted: retaining ownership of Block 38. *See Krobar Drilling*, 426 S.W.3d at 113 (stating that doctrine of election of remedies is designed to prevent party who has obtained one remedy from also obtaining remedy for same wrong that is inconsistent with first). Although the Whittingtons were ultimately unsuccessful in their efforts to maintain ownership, their election to litigate this permissible claim should not be used as a tool to deny them full recovery under their alternative claim for compensation. *See Miga*, 96 S.W.3d at 212 (stating that interest "is simply compensation for a judgment creditor's lost opportunity to invest the money awarded as damages at trial"); *State v. Hale*, 146 S.W.2d 731, 738 (Tex. 1941) (noting that right to compensation for damage to property includes recovery for "legal interest on the damages from the time the injury was inflicted"); *see also DiGiuseppe*, 269 S.W.3d at 603 (stating that litigant is not required to raise issue regarding alternative theory of recovery until reviewing court reverses trial court's judgment); *Boyce Iron Works*, 747 S.W.2d at 787 (explaining that if jury returns favorable findings on alternative theories, prevailing party "may seek recovery under an alternative theory if the judgment is reversed on appeal"). The decision to challenge the propriety of a taking does not waive a property owner's constitutional entitlement to compensation if the taking is deemed proper,

29

and we similarly can see no reason to conclude that challenging a condemnor's authority to take property waives a property owner's right to recover otherwise permissible interest awards.

In challenging the district court's interest awards, the City essentially argues that by electing to challenge its ability to take their property, the Whittingtons risked the possibility that they would not receive full compensation for the taking of their property by forfeiting their right to recover interest on any amount of compensation that exceeds the amount of the deposit made by the City. We believe that this punitive interpretation reverses the equities involved here. By electing to condemn Block 38 and assume possession of the property before the condemnation proceeding became final, *see Texan Land & Cattle Co.*, 138 S.W.3d at 390, the City ran the risk that the Whittingtons might challenge its ability to condemn the property and that it would owe interest on any compensation awarded that exceeded the amount of the required deposit, *see 2005 Whittington*, 174 S.W.3d at 907; *cf. Gordon*, 1996 Tex. App. LEXIS 605, at *11 (concluding that property owner was even entitled to interest that "accrued on the amount by which the special commissioners' award *exceeded* the jury award") (emphasis added).

For all of these reasons, we overrule the City's issue raised in its cross-appeal.

## CONCLUSION

Having overruled the City's issue on cross-appeal and having sustained the Whittingtons' issue on appeal, we reverse the portion of the district court's judgment awarding the accrued investment interest to the City, affirm the remainder of the district court's judgment, and remand the case for further proceedings consistent with this opinion.

30

_____

David Puryear, Justice

Before Justices Puryear, Goodwin, and Field

Affirmed in part; Reversed and Remanded in part

Filed:   January 29, 2015