

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 02-15-00188-CV**

DIEP TUYET VO AND VAN BA NGUYEN          APPELLANTS

V.

KAREN VU          APPELLEE

----------

FROM THE 141ST DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 141-265887-13

----------

## MEMORANDUM OPINION[1]

----------

Appellants Diep Tuyet Vo (Diep) and Van Ba Nguyen (Van) appeal from a jury verdict and subsequent judgment entered against them in favor of appellee Karen Vu (Karen). Because we find no reversible error based on Van and Diep's issues, we affirm the trial court's judgment.

---

[1]*See* Tex. R. App. P. 47.4.

## I. BACKGROUND

Diep and Karen met in 2005 when they both worked for a nail salon as nail technicians. Approximately three years later, they decided to open their own nail salon in Trophy Club, Texas. They chose Trophy Club because it was an affluent area, containing only two nail salons. On September 23, 2009, Diep and Karen signed a purchase agreement to buy one of the existing nail salons in Trophy Club—Luxury Nails—from the owner, Liem Nguyen (Liem). Diep and Karen orally agreed to operate Luxury Nails in Trophy Club as equal partners, sharing the profits and responsibilities. As such, Diep and Karen each paid half of the $63,000 purchase price. They assumed six months of Liem's existing lease and filed a certificate of assumed name, stating that they would conduct business under the name Luxury Nails. They opened a business checking account, and each assumed half of the responsibilities of paying bills, of purchasing supplies, and of profits or losses realized by Luxury Nails. Diep and Karen hired an employee, bought eight new pedicure chairs for the salon,[2] and bought needed supplies.

At the expiration of the six months allowed for Diep and Karen to assume Liem's lease, Diep asked Van, Diep's longtime friend, and Van's wife to sign a

_____

[2]Diep bought four of the chairs in August 2012, without informing Karen.

new lease with the landlord on behalf of Diep and Karen.[3]  Because the landlord required that the lessee be an owner of the business, Van filed a certificate of assumed name for Luxury Nails on April 16, 2010, listing only himself as the "person conducting such business."  On August 4, 2010, Karen and Diep formed K & DV Enterprises, LLC (the LLC), with each holding a 50% interest, as the entity under which they would operate Luxury Nails.  Although they formed the LLC, Karen and Diep's agreement to operate Luxury Nails as equal partners remained unchanged.  On October 11, 2010, Van and his wife signed a sixty-month, commercial lease for the space used by Luxury Nails, which began in December 2010.  Diep and Karen each paid half of the $3,553.66 security deposit.  Although Van and his wife previously only knew Diep, Karen trusted Van to act for her benefit as well as Diep's.  All parties agree that neither Van nor his wife owned any interest in the salon and that Diep and Karen paid all lease payments directly to the landlord.  Van knew Diep and Karen had an agreement to operate Luxury Nails in the leased space.

On October 22, 2010, Van, Diep, and Karen filed disposition-of-interest certificates showing that they each had withdrawn their interest in Luxury Nails. That same day, the LLC filed a certificate of assumed name for Luxury Nails. Karen signed a certificate of ownership, showing that the LLC owned Luxury

---

[3]Karen's counsel suggesting during opening jury argument that Diep and Karen were unable to enter into the lease themselves because they did not have the "necessary financial resources and credit."

3

Nails. In 2010, Luxury Nails realized a profit of $22,770, of which Karen received half. Karen also received a salary for her work as a nail technician in 2010 of $17,558 and in 2011 of $14,497. Karen's half of Luxury Nails' profits for 2011 was $17,467.

By 2012, animosity was brewing between Diep and Karen. On May 17, 2012, Diep, without informing Karen, withdrew $20,000 from the business checking account to satisfy any future lease payments as "protection" for Van and his wife. Unbeknownst to Karen and Van's wife, Van filed a certificate of formation for "Diep and Robert Enterprise, LLC" (Enterprise) on May 21, 2012.[4] The registered agent was listed as Diep, the managers were listed as Diep and Van's wife, and the organizer was Van.[5] Diep averred that she formed Enterprise with her children. On August 12, 2012, in a meeting between Karen, Diep, and Van, Van declared that either Diep or Karen had to leave Luxury Nails and that he needed their decision by the end of August. Karen contended that Diep responded she would let Karen keep the business. At a subsequent meeting on September 15, 2012, Van told Karen and Diep that he wanted Diep to "take over the store," but that he would change the locks if Karen and Diep did not resolve the issue. Karen sent Diep a letter around this time asking to buy her half of the

[4]Karen asserted that Van and Diep began a romantic relationship in 2011, apparently contributing to the divorce proceedings between Van and his wife in 2013. Diep denied that she and Van were in a romantic relationship.

[5]Van's wife stated she did not know about Enterprise, but Diep contended that Van's wife knew.

4

business. But Diep and Karen continued to operate Luxury Nails together for the next few months. Indeed, Karen's half of the profits realized by Luxury Nails for 2012 was approximately $26,000, and her income as a nail technician for 2012 was approximately $15,000.

On December 14, 2012, Van's attorney, Todd Hurd, served an eviction notice by certified mail on the LLC, in care of Karen and Diep[6]: "As you are aware, this location is leased by my clients [Van and his wife[7]] and you have no written agreement otherwise to occupy this location. Notice is hereby given and demand is hereby made that you vacate the premises . . . . [Y]ou have no rights to be on the premises and may be locked out at any time." It appeared from an invoice that Diep also hired Hurd to represent her in October 2012, but Diep maintained that she did not hire Hurd until early 2013. In any event, Karen and Diep continued to operate Luxury Nails together.

On January 31, 2013, Van and Hurd stood in front of Luxury Nails to prevent Karen and Diep from entering. Van and Hurd told Karen and Diep to remove their property and vacate the premises. Karen testified that Diep "put on a show like . . . barely cleaning up her things" and left to sit in her car. Although Diep testified that they both were evicted on January 31, 2013, she

---

[6]Although Karen's home address and the address of Luxury Nails were on the letter, Diep's home address was not.

[7]Van's wife stated that she knew nothing about Hurd's representation or the eviction notice.

acknowledged that she and Karen had never agreed who would continue to run Luxury Nails after their relationship soured. At the time of the eviction, Karen estimated that the total value of the LLC's equipment and supplies left at Luxury Nails or at Diep's house was approximately $36,182.[8] In 2012, Luxury Nails' last full year of business, Luxury Nails realized a net profit of $52,518, and Karen's salary as a nail technician was approximately $15,000.

On February 6, 2013, Karen drove by the salon and saw a sign that said the salon was closed for remodeling but would reopen soon. At that point, she concluded that Diep and Van must have "conspired with one another to take over [her] business." On February 6 and 12, 2013, Karen withdrew a total of $26,000 from the LLC's bank account. Diep withdrew an additional $6,000 from the LLC's bank account on February 6, 2013. On February 15, 2013, Enterprise filed a certificate of assumed name for Trophy Nails and Spa, which began operating out of the space formerly leased by Van for Luxury Nails. Karen believed Trophy Nails and Spa was "improving or getting better as time goes" in 2013, 2014, and 2015; thus, she believed the profits she would have received in 2013, 2014, and 2015 would not have decreased from those she received in 2010, 2011, and 2012. Because of the eviction and losing her business, Karen lost her appetite, could not sleep, became depressed, and lost weight. Karen's lost profits from

---

[8]Karen believed she was entitled to half of that amount—$18,091.

the LLC for 2013, 2014, and 2015 were calculated to be $53,579 in total. Her lost wages in 2013, 2014, and 2015 as a nail technician totaled $45,747.

In May 2013, Karen filed suit against Diep and Van, raising claims against both for breach of fiduciary duty and civil conspiracy, against Van for tortious interference with an existing contract, and against Diep for breach of contract. Karen sought actual and punitive damages. A jury unanimously found that Diep breached her agreement with Karen to operate Luxury Nails, Van had a fiduciary duty to Karen that he breached,[9] Van tortuously interfered with Diep and Karen's agreement to operate Luxury Nails, Diep and Van were part of a conspiracy that damaged Karen, and Diep and Van acted with malice or reckless indifference regarding Van's tortious interference, Van's breach of fiduciary duty, and Van and Diep's civil conspiracy. The jury also unanimously found that (1) Diep's breach of contract resulted in $53,579 in lost profits and $53,213 in attorney's fees to Karen; (2) Van's breach of fiduciary duty and tortious interference resulted in $53,579 in lost profits, $45,747 in lost wages, and $19,867 in lost investment to Karen; and (3) Karen was entitled to $31,500 in exemplary damages on Karen's claims for breach of fiduciary duty, tortious interference, and conspiracy based on clear and convincing evidence that Van or Diep acted with malice or with reckless indifference to Karen's "right . . . to be free of such

---

[9]The trial court granted Diep a directed verdict on Karen's claim that Diep had breached her fiduciary duty to Karen.

7

practices." The trial court rendered judgment in Karen's favor on May 28, 2015,[10] awarding $119,193 in actual damages[11] and $31,500 in punitive damages against Van and Diep jointly and severally. The trial court ordered that Karen recover her attorney's fees—in the amount of $53,213—from Diep.[12]

Van filed a motion for new trial, arguing that the evidence was legally and factually insufficient to support the jury's findings. *See* Tex. R. Civ. P. 320, 324(b). Diep filed a motion for new trial and a motion to modify the judgment, raising the same arguments proffered by Van in his motion and asserting that the attorney's-fee award against her violated the one-recovery rule and Karen's election of remedies. *See* Tex. R. Civ. P. 329b(g). The motions were overruled by operation of law. *See* Tex. R. Civ. P. 329b(c). Diep and Van appeal.

---

[10]The trial court initially rendered final judgment on March 23, 2015, but modified it on May 28, 2015, which was within its plenary power based on Diep's and Van's timely new-trial motions. *See* Tex. R. Civ. P. 329b(e).

[11]It appears this amount was reached by adding one award for lost profits to the awarded amounts for lost wages and lost investment—$53,579 + $45,747 + $19,867 = $119,193.

[12]The trial court also entered a postjudgment, temporary injunction, preventing Diep and Van from dissipating or transferring assets to avoid satisfaction of the judgment. *See* Tex. R. App. P. 24.2(d). In their notice of appeal, Diep and Van stated that they sought to appeal the temporary injunction, but they filed no appellate motion and raise no issue on appeal directed to the trial court's injunction. *See* Tex. R. App. P. 24.4. Accordingly, we withdraw any preferential status assigned this appeal under rule 24.4(d). *See* Tex. R. App. P. 24.4(d); *see also* Tex. R. App. P. 40.1. Although Diep and Van did not state in their notice of appeal that they also desired to appeal the trial court's final judgment, we have jurisdiction over this appeal based on their timely notice of appeal. *See* Tex. R. App. P. 25.1(b); *In re J.M.*, 396 S.W.3d 528, 530 (Tex. 2013).

## II.  CHARGE ERROR

In a portion of their fourth issue[13] and in their sixth issue, Van and Diep argue that the trial court erred by submitting questions regarding (1) Karen's lost wages because "lost wages [was] not an element of damages for the tort claims asserted" and (2) conspiracy because a principal and an agent cannot conspire as a matter of law.

Karen argues that Van and Diep failed to preserve these issues for our review because they did not object to the jury charge on this or any other basis. Indeed, a party complaining of an error in the charge must timely and plainly make the trial court aware of the complaint and obtain a ruling.  Tex. R. Civ. P. 272, 274; *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 43–44 (Tex. 2007); *see also* Tex. R. App. P. 33.1.  But Van and Diep argue on appeal that, as a matter of law, lost wages were not an available measure of damages and conspiracy was an insupportable claim.  As such, Van and Diep were not required to object to the charge on these bases to preserve any error; however, they were required to raise these complaints in an appropriate procedural device, such as a motion for instructed verdict, a motion for judgment notwithstanding the verdict, a motion for new trial, or a response thereto.  *See Wal-Mart Stores, Inc. v. McKenzie*, 997 S.W.2d 278, 279–80 (Tex. 1999) (op. on reh'g); *DeAtley v.*

---

[13]In the remainder of their fourth issue, Van and Diep assert that lost wages should not have been submitted to the jury because there was legally insufficient evidence proffered to support the submission.  We address that portion of their issue in a later section.

*Rodriguez*, 246 S.W.3d 848, 850 (Tex. App.—Dallas 2008, no pet.); *Key Energy Servs., Inc. v. Eustace*, 290 S.W.3d 332, 338–39 (Tex. App.—Eastland 2009, no pet.). Neither Van nor Diep asserted in their motions for new trial[14] or their oral motion for instructed verdict that conspiracy is inapplicable in the context of a principal-agent relationship or that lost wages may not be recovered for a breach of fiduciary duty or for tortious interference. *See State Farm Lloyds v. Fitzgerald*, No. 03-99-00177-CV, 2000 WL 1125217, at *9–10 (Tex. App.—Austin Aug. 10, 2000, no pet.) (not designated for publication) (holding argument in new-trial motion not sufficiently specific enough to bring to trial court's attention the specific error raised on appeal, rendering appellate complaint waived). And they do not argue on appeal that they did so.[15] Therefore, Van and Diep's as-a-

---

[14]We rely solely on Van's and Diep's amended motions for new trial to determine preservation. Although Diep filed a brief in support of her initial motion for new trial that perhaps could have preserved more arguments for our review than did her amended motion, the amended motion supplanted and replaced the initial motion. *See* Tex. R. Civ. P. 62, 65; *State v. Seventeen Thousand and No/100 Dollars U.S. Currency*, 809 S.W.2d 637, 639 (Tex. App.—Corpus Christi 1991, no writ). Any further reference in this memorandum opinion to Van's or Diep's "motion" is a reference to their amended motions.

[15]To the extent Van and Diep attempt to argue that these alleged errors were fundamental such that no timely objection or motion was required, we disagree. *See In re B.L.D.,* 113 S.W.3d 340, 350 (Tex. 2003) (noting fundamental error is "a discredited doctrine" and should be used only in rare circumstances not present here), *cert. denied*, 541 U.S. 945 (2004); *see also Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 577 (Tex. 2006) (defining fundamental error "as those instances in which error directly and adversely affects the interest of the public generally . . . or instances in which the record affirmatively and conclusively shows that the court rendering the judgment was without jurisdiction of the subject matter").

matter-of-law issues directed to the court's charge are not preserved for our review. We overrule this portion of issue four and the entirety of issue six.

## III.  SUFFICIENCY OF THE EVIDENCE

In their third and fifth issues and in the remaining portion of their fourth issue, Diep and Van argue that the evidence was legally insufficient to support the damage awards for lost wages and lost profits.[16]  Diep and Van both raised these no-evidence arguments in their motions for new trial and, thus, preserved their legal-sufficiency issues for our review.  *See T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 220–21 (Tex. 1992).

### A.  STANDARD OF REVIEW

We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact.  *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998),

---

[16]Although Van and Diep seemed to raise factual insufficiency of the evidence to support the jury's findings regarding lost wages and lost profits in their statement of the issues presented for review, they present no other reference to or argument regarding factual insufficiency and focus solely on the fact that there was "no evidence" of these damages.  We will not address factual insufficiency in the absence of any cogent briefing on that issue.  *See Slagle v. Prickett*, 345 S.W.3d 693, 700 (Tex. App.—El Paso 2011, no pet.); *Barnett v. Coppell N. Tex. Ct., Ltd.*, 123 S.W.3d 804, 828 (Tex. App.—Dallas 2003, pet. denied); 5 Tex. Jur. 3d *Appellate Review* § 388 (2015).

11

*cert. denied*, 526 U.S. 1040 (1999). In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable fact-finder could and disregard evidence contrary to the finding unless a reasonable fact-finder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005).

## B. LOST WAGES

The jury found that Karen was entitled to $45,747 in lost wages based on Van's breach of his fiduciary duty to Karen or tortious interference with Karen and Diep's agreement to operate Luxury Nails. Diep and Van argue that Karen proffered no evidence of either the amount of money she would have earned absent Van's conduct or the amount she earned after the eviction.

Lost wages are the actual loss of income due to a plaintiff's inability to perform a specific job from the time of the injury that forms the basis of the action to the time of trial. *See Dawson v. Briggs*, 107 S.W.3d 739, 749 (Tex. App.—Fort Worth 2003, no pet.); *Koko Motel, Inc. v. Mayo*, 91 S.W.3d 41, 51 (Tex. App.—Amarillo 2002, pet. denied). Karen and her attorney testified that Karen's lost wages during 2013, 2014, and 2015 totaled $45,747. Karen's attorney testified as to the amount of her attorney's fees; however, when counsel for Diep and Van questioned the reasonableness of that amount based on the $63,000 value of the LLC, Karen's attorney testified to the specifics of Karen's requested damages,

12

including lost wages.[17] Karen further testified that it was harder for her to find employment because of her age, which was one of the reasons she wanted to own a nail business.[18] Diep testified that nail technicians typically only work on a commission basis with "no benefits." Neither Diep nor Van disputed this evidence at trial. This evidence was more than a scintilla supporting the jury's finding that Karen's lost wages as a nail technician at Luxury Nails as a result of Van's tortious interference or breach of fiduciary duty totaled $45,747.[19] See Hyde-Way, Inc. v. Davis, No. 2-08-313-CV, 2009 WL 2462438, at *10 (Tex. App.—Fort Worth Aug. 13, 2009, pet. denied) (mem. op.) (holding plaintiff's testimony as to wages he lost as a result of tortious assault was legally sufficient to support lost-wages award in that amount); City of San Antonio v. Vela, 762 S.W.2d 314, 320 (Tex. App.—San Antonio 1988, writ denied) (holding same in personal-injury case); see also Harrison v. Gemdrill Int'l, Inc., 981 S.W.2d 714, 718 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) ("The measure of

---

[17]Van and Diep do not argue that we may not consider Karen's attorney's testimony regarding these facts.

[18]Karen testified that at the time of trial—March 2015—she was working in Grapevine, "[s]till in the nail profession," and that some of her customers from Luxury Nails "follow[ed] [her] to the new place." Diep contended that some of the customers who followed Karen had been Diep's customers at Luxury Nails. No other evidence regarding Karen's employment after the eviction was offered by Karen, Diep, or Van.

[19]Diep and Van argue that the only evidence Karen proffered "was the amount of money she had earned working as a nail technician at [Luxury Nails] from 2010 through 2012." This ignores Karen's and her attorney's testimony as to her lost wages for 2013, 2014, and 2015.

damages for interference with contracts is the same as those for breach of contract—the court attempts to put the plaintiff in the same economic position he would have been in had the contract not been breached."); *cf. Dawson*, 107 S.W.3d at 750 n.5 (noting appellant conceded that appellee's testimony as to lost wages as a result of injury was legally sufficient to support award for that amount).

Van and Diep argue that Karen was required to proffer evidence of the wages she "would have earned had . . . she not been terminated, less the sum . . . she did earn after termination." However, these specific elements of proof have been applied to statutory employment claims, such as retaliatory discharge or racial discrimination, which prescribe by statute the proof required for lost wages. *See, e.g.*, *Hertz Equip. Rental Corp. v. Barousse*, 365 S.W.3d 46, 57 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (recognizing correct measure of damages for lost wages in retaliatory-discharge claim under the labor code); *Shear Cuts, Inc. v. Littlejohn*, 141 S.W.3d 264, 271–72 (Tex. App.—Fort Worth 2004, no pet.) (interpreting lost-wages evidence in racial-discrimination claim under the labor code); *Goodman v. Page*, 984 S.W.2d 299, 305 (Tex. App.—Fort Worth 1998, pet. denied) (discussing lost wages in the context of retaliatory-discharge claim under the health and safety code). Van and Diep offer no authority for their contention that these proof elements for statutory lost wages apply to Karen's common-law claims for tortious interference or breach of fiduciary duty.

14

Additionally, lost-wages damages have been equated to damages for loss of earning capacity in the past in the personal-injury context. *See Bowler v. Metro. Transit Auth. of Harris Cty.*, No. 01-06-00553-CV, 2007 WL 1299803, at *3 (Tex. App.—Houston [1st Dist.] May 3, 2007, no pet.) (mem. op.) (recognizing correct measure of damages in personal-injury case is loss of earning capacity and not lost wages, but determining evidence of one is evidence of the other). The measure for loss of earning capacity is the plaintiff's diminished earning power or earning capacity in the past directly resulting from the injuries. *Kroger Co. v. Milanes*, 474 S.W.3d 321, 340 (Tex. App.—Houston [14th Dist.] 2015, no pet.). To meet this measure, a plaintiff must introduce evidence from which a jury may reasonably measure in monetary terms her earning capacity prior to the injury. *Id.* Karen's, Diep's, and Karen's attorney's testimony allowed the jury to determine this measure of damages.

Finally, we note that in the absence of an objection to the charge on this basis, we review the sufficiency of the evidence in light of the charge submitted even if the trial court's statement of the law was not entirely correct. *See Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex.) (op. on reh'g), *cert. denied*, 530 U.S. 1244 (2000). The charge did not define lost wages other than to state they were those that "were proximately caused by [Diep's] and/or [Van's] conduct found [regarding breach of fiduciary duty] and/or [tortious interference]." No party objected to the form of the submission on lost-wages damages. As charged, the

15

evidence was legally sufficient to support the jury's lost-wages finding. *See Yeng v. Zou*, 407 S.W.3d 485, 489–90 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

We overrule issue three and the remaining portion of issue four.

### C. LOST PROFITS

In their fifth issue, Van and Diep argue that although Karen offered evidence as to her income for 2010, 2011, and 2012, she "offered no evidence of . . . the amount of income the business generated during the period for which recovery was sought." "[W]here it is shown that a loss of profits is the natural and probable consequence of the act or omission complained of, and their amount is shown with sufficient certainty, there may be a recovery therefor." *Sw. Battery Corp. v. Owen*, 115 S.W.2d 1097, 1098 (Tex. 1938). Such a loss does not have to be shown by exact calculation; however, the injured party must go further than showing that it suffered lost profits and must show the amount by competent evidence with reasonable certainty. *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 504 (Tex. 2001). This is a fact-intensive determination that should be based on objective facts, figures, or data from which the lost-profits amount may be ascertained. *Id.* It is not required that the injured party produce in court the documents underlying the opinions or estimates. *Wise Elec. Coop., Inc. v. Am. Hat Co.*, 476 S.W.3d 671, 712 (Tex. App.—Fort Worth 2015, no pet.). Proof of lost damages can be accomplished with evidence of profit history. *Tex. Instruments, Inc. v. Teletron Energy Mgmt.*, 877 S.W.2d 276, 279 (Tex. 1994). "Furthermore, in calculating the plaintiff's loss, it is proper to consider the

16

normal increase in business which might have been expected in the light of past development and existing conditions." *Id.*

Here, Luxury Nails was an established business operating in an affluent area when Karen and Diep bought it from Liem. Karen and Diep were experienced nail technicians. From 2010 through 2012, Luxury Nails was profitable from the beginning of Karen and Diep's ownership, with steadily increasing profits from 2010 through 2012. Neither Van nor Diep proffered any evidence disputing the accuracy of these numbers. Based on the amounts Karen and her attorney testified to regarding her half of the profits from the date she and Diep bought Luxury Nails to the date of the eviction, the jury found that Karen lost $53,579 in profits from the date of the eviction until the end of the lease term as a result of Diep's breach of their agreement, Van's tortious interference, and Van's breach of fiduciary duty.[20]

Van and Diep assert that Karen was required to produce evidence of the actual profits realized by the business between 2013 and the end of the lease term in 2015. But it is appropriate to establish lost profits based on evidence of profit history and based on the normal and expected increase in business supported by past development and existing conditions. *Wise Elec. Coop.*,

_____

[20]This was the amount Karen and her attorney testified represented her total lost profits from the date of the eviction until the end of 2015, which was the date Van and Van's wife's lease expired. Karen's attorney stated during closing jury argument that this amount represented an average of the profits Karen realized in 2010, 2011, and 2012.

17

476 S.W.3d at 711–12. Karen produced such evidence to establish her lost profits. We conclude the evidence was legally sufficient to establish Karen's lost profits as a result of Diep's and Van's actions with reasonable certainty. *See, e.g.*, *id.* at 712–15; *Anthony Equip. Coop. v. Irwin Steel Erectors, Inc.*, 115 S.W.3d 191, 204–05 (Tex. App.—Dallas 2003, pet. dism'd); *cf. Acadia Healthcare Co. v. Horizon Health Corp.*, 472 S.W.3d 74, 89–91 (Tex. App.—Fort Worth 2015, pet. filed) (op. on reh'g) (finding no evidence of lost profits because lost-profits testimony was based on expert's speculation unsupported by facts); *AZZ Inc. v. Morgan*, 462 S.W.3d 284, 295–96 (Tex. App.—Fort Worth 2015, no pet.) (holding jury's finding of zero lost profits supported by factually sufficient evidence because lost-profit testimony was based on "mere hope" of profitable business without contractual relationship). *See generally Sw. Battery*, 115 S.W.2d at 1098–99 ("Where the business is shown to have been already established and making a profit at the time when the contract was breached or the tort committed, such pre-existing profits, together with other facts and circumstances, may indicate with reasonable certainty the amount of profits lost. . . . [I]t is proper to consider the normal increase in business which might have been expected. . . ."). We overrule issue five.

## IV. ONE-SATISFACTION RULE

In their first issue, Diep and Van argue that the judgment as against Diep violated the one-satisfaction rule because Karen recovered lost profits and attorney's fees for her breach-of-contract claim against Diep and also recovered

18

lost profits and punitive damages for her civil-conspiracy claim against Diep and Van. In issue two, Diep contends that the trial court erred by failing to require Karen to elect her remedies against Diep and, thereby, award damages only on the theory of liability affording the greatest recovery. Because these concepts as argued by Van and Diep are closely related, we will address them together.

We begin by explaining the terms we will use regarding these issues. Van and Diep argue that Karen was required to elect her remedies before judgment was entered. However, the election-of-remedies doctrine applies when a party is pursuing inconsistent yet coexistent remedies for the same wrong. *Whittington v. City of Austin*, 456 S.W.3d 692, 710 (Tex. App.—Austin 2015, pet. denied). Remedies requiring an election would be, for example, seeking an injunction for specific performance of a contract and rescission of that same contract. *See Ginn v. NCI Bldg. Sys., Inc.*, 472 S.W.3d 802, 840–41 (Tex. App.—Houston [1st Dist.] 2015, no pet.). It is an affirmative defense that must be affirmatively pleaded and proved by a defendant. *Id.* at 840. Here, Karen did not plead for inconsistent remedies; she pleaded for damages based on multiple theories of liability; thus, Diep and Van understandably did not plead the affirmative defense of election of inconsistent remedies. *See generally* Tex. R. Civ. P. 48 ("A party may also state as many separate claims . . . as he has regardless of consistency and whether based upon legal or equitable grounds or both."), 94 ("In pleading to a preceding pleading, a party shall set forth affirmatively . . . any . . . matter constituting an avoidance. . . .").

19

The gravamen of Diep and Van's first two issues is that Karen was allowed a double recovery for a single injury and, thus, should have been required to choose between the acceptable measures of damages found by the jury before judgment was rendered. *See generally Kish v. Van Note*, 692 S.W.2d 463, 466–67 (Tex. 1985) ("If the jury verdict contains more than one acceptable measure of damages, a plaintiff may be forced to elect prior to judgment the recovery he wants by waiving the surplus findings with respect to the damages."). This is a complaint under the one-satisfaction rule—limiting a plaintiff's recovery to one of several overlapping theories and preventing more than one recovery for the same injury—not the election-of-remedies doctrine. *See Household Credit Servs., Inc. v. Driscol*, 989 S.W.2d 72, 80 (Tex. App.—El Paso 1998, pet. denied). Accordingly, we will refer to Van and Diep's complaints as arising under the one-satisfaction rule. *See Horizon Offshore Contractors, Inc. v. Aon Risk Servs. of Tex., Inc.*, 283 S.W.3d 53, 59–60 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (discussing election-of-remedies doctrine and one-satisfaction rule).

In her motion for new trial and motion to modify the judgment, Diep argued that the award of attorney's fees in the judgment violated the "'one recovery rule' and the election of remedies made by [Karen]"; thus, the one-satisfaction issues as to the attorney's fees entered against Diep are preserved for our review. *See Royce Homes, L.P. v. Humphrey*, 244 S.W.3d 570, 582 (Tex. App.—Beaumont 2008, pet. denied). But as argued by Karen, she alleged breach of

20

contract as well as tort claims, which resulted in separate and distinct injuries: "[Karen's] claims for breach of fiduciary duty, intentional interference with a contract, and civil conspiracy were not based upon [Diep's] failure to adhere to their agreement, but were based upon [Diep] and [Van] conspiring to deprive [Karen] of her entire investment." As such, Karen could recover the lost profits and attorney's fees awarded for Diep's breach of contract as well as the actual damages (minus lost profits) and exemplary damages separately awarded for Diep's and Van's tortious conduct. *See Peterson Grp., Inc. v. PLTQ Lotus Grp., L.P.*, 417 S.W.3d 46, 63–64 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (holding separate damage recoveries for breach of contract and fraud did not impermissibly afford double recovery because "the jury awarded PLTQ separate and distinct damages for separate and distinct injuries for fraud and breach of contract"); *cf. AZZ*, 462 S.W.3d at 298 ("Here, AZZ sought recovery of the same damages—lost profits—for each of its theories of liability. AZZ did not seek recovery of different damages for a distinct injury stemming from each of its liability theories."); *Saden v. Smith*, 415 S.W.3d 450, 468 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) ("It may have been possible to categorize Saden's various bad acts between breaches of contract and other separate breaches of fiduciary duty, and then to quantify lost profits or other damages attributable to each so as to identify separate injuries leading to separate amounts of damages. But as this case was presented, tried, and charged to the jury, the actual

21

evidence of injury and lost profits did not show separate and distinct injuries resulting in separate and distinct lost profits."). We overrule issues one and two.

## V. CONCLUSION

Having overruled Van and Diep's issues, we affirm the trial court's judgment. *See* Tex. R. App. P. 43.2(a).

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL: DAUPHINOT, MEIER, and GABRIEL, JJ.

DELIVERED: May 12, 2016

22